UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CENTURY SURETY COMPANY,<br><br>               Plaintiff,<br><br>   v.<br><br>BELMONT SEATTLE, LLC, a California limited liability company, and MARWAN and JACQUELINE F. BAHU, husband and wife and their marital community,<br><br>              Defendants. | CASE NO. C12-823 MJP<br><br>ORDER GRANTING SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Plaintiff's motion for summary judgment (Dkt. No. 31) in their declaratory judgment action. The motion for summary judgment reaches all issues in this case. Having considered the motion, response (Dkt. No. 34), reply (Dkt. No. 38), surreply (Dkt. No. 41) and all related documents, the court GRANTS the motion for summary judgment.

ORDER GRANTING SUMMARY JUDGMENT- 1

**Background**

This case seeks to resolve the narrow issue of coverage in an insurance dispute. Plaintiff Century Surety (Century) is defending Defendants Belmont Seattle, LLC., Marwan and Jacqueline F. Bahu, and their marital community (Belmont) in an underlying dispute under a complete reservation of rights.

In 2005, Westmore Management, LLC, (Westmore) approached the Bahu's about creating a joint venture to invest in Belmont Place, which was at the time an apartment building in Seattle. (Dkt. No. 36 at 1.) The Bahus and other investors signed a Joint Venture Agreement in October 2005 and purchased Belmont Place. (Id.) The manager of the Joint Venture was Westmore, whose authority encompassed "…all actions and decisions respecting the management, operation and control of the Joint Venture" and whose actions were "binding upon the Joint Venture." (Id. at 9.)

Between 2005 and 2007, Westmore worked to move out existing tenants and did not renew or initiate new leases. Westmore did, through its property manager, continue to collect rent from existing tenants until all tenants were vacated from the building on April 30, 2007. (Id. at 2.) Rent collected by Westmore was deposited into Westmore's account. (Id. at 3.) In April 2007, the joint venture formed a limited liability company, Belmont Seattle, LLC. (Dkt. No. 34 at 4.) On April 16, 2007, Belmont Place apartments were transferred by quit claim deed to Belmont Seattle. Century claims this transfer of ownership was merely a change in identity or form. (Dkt. No. 31 at 4.) Belmont Seattle was formed to serve as the declairant of the building once it was converted into a condominium, as well as to sell the units to purchasers. Construction was done by a contractor to turn the building from apartments to condominiums from May 2007 to April 2008. (Dkt. No. 36 at 3.)

Century provided an apartment building liability policy through Cascade Risk Placement, Inc. for its Insurance Program for Association Housing (IPAH), under which Century insured apartment buildings owned by Cascade Risk's customers. (Dkt. No. 31 at 1.) This policy's declaration page specifies the insured's business as apartments. (Id. at 2.) Belmont Seattle and Belmont Place, the property at issue, were part of the IPAH arrangement from April 30, 2007 to December 1, 2007. (Id.) They were added to the policy for consideration of $990 per month. (Dkt. No. 32-4 at 1.) During the coverage period, Belmont Seattle sold 11 of the 42 condominium units, leaving Belmont Seattle owners of 31 units. (Dkt. No. 36 at 3.)

In December of 2011, Belmont Lofts Condominium Homeowners Association sued Belmont for alleged construction defects (underlying lawsuit). (Id. at 4.) The underlying lawsuit is scheduled for hearing June 10, 2013.  Century is representing Belmont under a complete reservation of rights, and brings this declaratory judgment action to determine whether there is a coverage obligation. Century challenges their obligation based on exclusionary language in the contract stating coverage does not apply for property damage to:

> (1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;
>
> (2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;
>
> ***
>
> Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held out for rental by you. (Dkt. No. 32-2.)

The term "you" used in these exclusions is defined in the insurance contract as "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named

ORDER GRANTING SUMMARY JUDGMENT- 3

1  Insured under this Policy." (Dkt. No. 32-3.) Whether Belmont falls within this exclusionary
2  language is the only question presented as necessary to resolve the coverage question.

### Discussion/Analysis

A.  Standard on Summary Judgment and Washington Insurance Law

Under Washington law an insurance policy should be given a fair and reasonable interpretation as "would be given by the average person purchasing insurance." Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wn.3d 654, 666 (2000), quoting from B&L Trucking & Constr. Co., 134 Wn.2d at 427-83 (1998). "If the language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists. If the clause is ambiguous, however, extrinsic evidence of the intent of the parties may be relied upon to resolve the ambiguity." Id. A construction that results in hardship or absurdity, or that contradicts the general purpose of the contract is presumed unintended by the parties. Phil Schroeder v. Royal Globe Ins. Co., 99 Wn.2d 65, 68 (1983). Exclusionary clauses should be construed strictly against the insurer. Euric v. Pemco Ins. Co., 108 Wn. 2d 338, 340 (1987).

B.  Application of the Exclusionary Language to Belmont

Belmont first argues the exclusionary language in the insurance contract does not apply because "you" and "your" is defined as referring to the named insured, or someone qualifying as a named insured under the policy. Because IPAH is the named insured under the policy, Belmont argues it is not covered. This strained reading is untenable. From the face of the contract, IPAH is the first named insured, but does not appear to actually own property that is insured. Instead, various properties are listed in the Declarations incorporated into the contract.

The language of the policy allows for insureds to be listed in the Declarations incorporated into the contract. (Dkt. No. 32-1 at 28.) Belmont is listed in one of these Declarations. Belmont paid premiums and apparently intended to receive the benefit of the insurance policy. It is

unreasonable to read the policy to cover Belmont as a named insured for the benefit of the policy but not for the purpose of exclusionary clauses. Such an interpretation would contradict the general purpose of the contract. Belmont is a named insured for the purposes of reading the insurance contract.

### C. Alienated Property Exclusion

It is undisputed that 11 of the condominiums in question were sold in October and November of 2007. The only argument raised by Belmont to prevent these from falling under the alienated property exclusion is the applicability of the exception to the exclusion, which reads: "Paragraph (2) of this [alienated property] exclusion does not apply if the premises are "your work" and were never occupied, rented or held out for rental by you." (Dkt. No. 32-2.) Belmont argues it never rented or held out the property for rental because it was not actively renewing leases or personally collecting rent from the existing tenants during the period of conversion. (Dkt. No. 34 at 9-11.) Westmore Management, they argue, collected rent from existing tenants, never giving the benefit to Belmont. This argument is contradicted by the quit claim deed, which explicitly says that Westmore "in consideration of mere change in identity or form pursuant to WAC 458-61A-211(a) in hand paid, conveys and quit claims to Belmont Seattle, LLC…" the property in question. (Dkt. No. 32-5 at 8.) Based on this language, Westmore stood in the shoes of Belmont.

Belmont seeks to have it both ways. On one hand, they want the remodeling work done by their contractor to be "your work" for purposes of the exception to the alienated property exclusion. On the other hand, they want the rent collected by Westmore to be alien to them. The facts do not support this. It is undisputed that Westmore collected rent as a landlord to existing tenants before the condominium conversion was complete. (Dkt. No. 36 at 3.) Westmore later quit claimed the property to Belmont as a "mere change in identity" such that Westmore's rent collection is attributable to Belmont. Because Belmont rented the property before the units were

ORDER GRANTING SUMMARY JUDGMENT- 5

alienated, the exception to the exclusion does not apply. The sold condominium units are alienated property and as such, Belmont is not entitled to coverage for them.

### D. Owned Property Exclusion

Belmont does not dispute that it owned 31 units, the remainder after the 11 sold as condominiums, at the conclusion of the Century policy period. They argue that this does not bar coverage for the 11 units, and the accompanying common areas, that were sold. (Dkt. No. 34 at 13,) State Farm Fire & Cas. Co. v. English Cove Ass'n, Inc., 121 Wn. App. 358, 371 (2004). This is true. As discussed above, the alienated property exclusion applies to those 11 units. Belmont's second argument that the "owned property" exclusion is ambiguous fails. As discussed above, Belmont is a named insured for the purposes of the benefits and exclusions in the policy. The Court will not read the contract language to create ambiguity where there is none. The owned property exclusion bars coverage of the 31 units owned outright by Belmont at the end of the Century policy period.

### Conclusion

Because the owned property exclusion to the Century policy applies to the units Belmont owned at the end of the policy period and the alienated property exclusion applies to the units Belmont sold as condominiums, the Century policy does not cover Belmont. Summary judgment is GRANTED in favor of Century Surety on all claims.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 19th day of December, 2012.

_____
Marsha J. Pechman
Chief United States District Judge