1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CENTURY SURETY COMPANY,

             Plaintiff,

    v.

BELMONT SEATTLE, LLC,

             Defendant.

CASE NO. C12-823 MJP

ORDER DENYING MOTIONS FOR
SUMMARY JUDGMENT

This matter is before the Court on Defendant's motion for summary judgment and

attorney's fees and costs (Dkt. No. 55) and on Plaintiff's renewed motion for summary judgment

(Dkt. No. 57). The Court reviewed both motions and all related pleadings and documents. The

Court DENIES both motions for summary judgment without prejudice.

**Background**

Plaintiff-insurer Century Surety ("Century") originally brought this insurance dispute

against Defendant-insured Belmont Seattle, LLC ("Belmont"), seeking declaration that Century

had no duty to defend Belmont in an underlying lawsuit brought by a third party for alleged

construction defects in Belmont's property. (Dkt. No. 31.)

1   In 2005, Westmoore Management, LLC ("Westmoore") and other investors in a joint

2   venture purchased an apartment building with the intent to convert it into a condominium. (Dkt.

3   No. 36 at 1.) As manager of the Joint Venture, Westmoore worked to move out existing tenants

4   after the purchase. (Id. at 9.) Westmoore did not renew or initiate new leases, but continued to

5   collect rent from existing tenants until all tenants were vacated from the building. (Id. at 2.) Rent

6   collected was deposited into Westmoore's account. (Id. at 3.) In 2007, the Joint Venture formed

7   a limited liability company, Belmont Seattle, LLC, which took title to the apartment building by

8   quit claim deed and completed converting the building into a condominium. (Dkt. Nos. 1 at 6, 31

9   at 4.)

10   Century provided an apartment building policy under which Belmont was covered. (Dkt.

11   No. 1 at 1.) During the coverage period, Belmont sold 11 of the 42 condominium units, leaving

12   Belmont owners of 31 units. (Dkt. No. 36 at 3.) When the Belmont Lofts Condominium Owners

13   Association brought the underlying lawsuit against Belmont, Century agreed to defend Belmont

14   under a reservation of rights. (Dkt. No. 1 at 7.)

15   Century brought this declaratory judgment action to determine whether there is a coverage

16   obligation in the underlying lawsuit. (Id. at 7-8.) Century challenges its obligation based on

17   exclusionary language in the policy contract stating coverage does not apply for property damage

18   to the following:

19      (1) Property you own, rent, or occupy, including any costs or expenses incurred by
20          you, or any other person, organization or entity, for repair, replacement,
       enhancement, restoration or maintenance of such property for any reason,
       including prevention of injury to a person or damage to another's property;
21      (2) Premises you sell, give away or abandon, if the "property damage" arises out of
       any part of those premises;
22       ***
    Paragraph (2) of this exclusion does not apply if the premises are "your work" and
23       were never occupied, rented or held out for rental by you.  (Dkt. No. 32-2.)

24

1    The term "you" used in these exclusions is defined in the insurance contract as "the

2   Named Insured shown in the Declarations, and any other person or organization qualifying as a

3   Named Insured under this Policy." (Dkt. No. 32-3.)

4    On December 19, 2012, this Court issued an Order granting summary judgment in favor

5   of Century, deciding both exclusions applied to bar coverage because Westmoore "stood in the

6   shoes of Belmont" in collecting rent. (Dkt. No. 46 at 5.) This determination was made based on

7   language in the quit claim deed, which stated Westmoore "in consideration of mere change in

8   identity  or form pursuant to WAC 458-61A-211(a) in hand paid, conveys and quit claims [the

9   property] to Belmont Seattle, LLC." (Id.)

10    Belmont appealed the Order. The Ninth Circuit reversed and remanded, finding the

11   record was too bare to disregard the corporate separateness of Belmont and Westmoore and

12   impute Westmoore's rent collecting activity to Belmont. (Dkt. No. 50.) While the appeal was

13   pending, the underlying case settled, and other insurers paid the settlement. (Dkt. No. 55 at 2.)

14   Century petitioned for panel rehearing en banc, which was denied. (Appellate Dkt. Nos. 26, 30.)

15    This case is now before this Court on remand from the Ninth Circuit. Belmont moved for

16   summary judgment and Olympic Steamship attorney's fees, arguing it "prevailed" against

17   Century's claim for declaratory judgment. (Dkt. No. 55 at 2.) Century opposed the motion and

18   renewed its motion for summary judgment, arguing the alienated property exclusion applies

19   because Belmont "rented or held out for rental" units through its agent Westmoore. (Dkt. No. 57

20   at 5-6.) Century produced additional exhibits in support of its renewed motion. (Dkt. No. 3.)

21    **Discussion/Analysis**

22    I.    Summary Judgment Standard

23    Summary judgment is proper where "the movant shows that there is no genuine issue as to

24   any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

ORDER DENYING MOTIONS FOR SUMMARY
JUDGMENT- 3

1    56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue

2    of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In assessing whether a party has met

3    its burden, the underlying evidence must be viewed in the light most favorable to the non-

4    moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

5    II.    Belmont's Motion for Summary Judgment and Olympic Steamship Fees

6          i.    Mootness

7          Belmont premises its summary judgment motion on the fact that the underlying

8    construction defect lawsuit has settled, thereby rendering moot any declaration of potential duties

9    owed by Century. (Dkt. No. 55 at 4.) Belmont explicitly argues "the duty to indemnify claim in

10   Century's lawsuit is now moot" because other insurers paid the settlement, and because it is not

11   otherwise seeking defense or coverage. (Id. at 3.)

12         Even if the duty to defend no longer affects the underlying lawsuit, evidence of the

13   settlement is insufficient to support mootness in this action, and ultimately works against

14   Belmont's request for Olympic Steamship attorney's fees, because the ability to award fees

15   remains at issue. (Dkt. Nos. 16, 55.) See Allstate Ins. Co. v. Bowen, 121 Wn. App. 879, 882-83

16   (2004) (holding coverage issue is not moot despite settlement of underlying lawsuit because

17   determination of coverage directly affects recovery of Olympic Steamship fees). As discussed

18   further below, coverage must be successfully established to recover attorney's fees under

19   Olympic Steamship. Id. Because Century's declaratory judgment action is not moot, Belmont's

20   summary judgment motion is DENIED.

21         ii.    Olympic Steamship Fees

22         Attorney's fees are appropriately awarded "in any legal action where the insurer compels

23   the insured to assume the burden of legal action, to obtain the full benefit of his insurance

24

ORDER DENYING MOTIONS FOR SUMMARY
JUDGMENT- 4

1   contract, regardless of whether the insurer's duty to defend is at issue." <u>Olympic S.S. Co., Inc. v.</u>

2   <u>Centennial Ins. Co.</u>, 117 Wn.2d 37, 53 (1991). "The payment is required <u>after</u> the judicial

3   determination is made [regarding coverage] and fees under <u>Olympic</u> are awarded only if the

4   insured prevails." <u>Alaska Nat. Ins. Co. v. Bryan</u>, 125 Wn. App. 24, 36 (2004) (emphasis added).

5   The "prevailing" party is "the party who receives an affirmative judgment in [its] favor." <u>Nw.</u>

6   <u>Mut. Life Ins. Co. v. Koch</u>, 2010 WL 519727, at *4 (W.D. Wash. Feb. 10, 2010).

7       An <u>Olympic Steamship</u> award is premature in this case because a final substantive ruling

8   on coverage has not been issued to determine the "prevailing" party. <u>See, e.g.</u>, <u>Mid-Continent</u>

9   <u>Cas. Co. v. Subterra, Inc.</u>, 2008 WL 4372352, at *2 (W.D. Wash. Sept. 23, 2008)(holding an

10  award of <u>Olympic Steamship</u> fees would be inappropriate prior to a definitive finding on the

11  parties' insurance contract interpretation). Belmont argues the Ninth Circuit ruled "the potential

12  for coverage existed as of [this Court's December 19, 2012 Order], so Century owed a duty to

13  defend as of that date." (Dkt. No. 55 at 6.) Based on this interpretation of the Ninth Circuit's

14  ruling, Belmont argues it has "prevailed on Century's duty to defend claim." (<u>Id</u>.)

15      Belmont's interpretation of the Ninth Circuit's ruling is incorrect. Neither the Ninth

16  Circuit nor this Court has decided the substantive issue or granted relief in Belmont's favor. The

17  Ninth Circuit simply found there was a question of fact as to whether Westmoore's rent

18  collecting activity was legally attributable to Belmont. (Dkt. No. 50 at 3.) This finding is not the

19  same as a definitive ruling on the substantive coverage issue, which is now again before this

20  Court. Further, Belmont cites no authority to support its argument that it is the prevailing party

21  merely because the underlying lawsuit settled before this Court issued a final substantive

22  coverage decision. Despite settlement, Century could still prevail with a declaration that it had no

23  duty to defend, and such a declaration would absolve Century from paying attorney's fees to

24

ORDER DENYING MOTIONS FOR SUMMARY
JUDGMENT- 5

ative

1   Belmont. To summarize, although the Ninth Circuit held Belmont has not lost at this point in the

2   litigation, Belmont has not yet won. The matter is still open. The motion for attorney's fees and

3   costs is DENIED.

4          III.     Century Surety's Renewed Motion for Summary Judgment

5          Century renews its request for summary judgment, asking the Court to find Belmont

6   rented or held out for rental properties at issue such that an exclusion in the insurance policy

7   would relieve it of any coverage duty. (Dkt. No. 57.) This Court previously determined Belmont

8   stood in the shoes of Westmoore in collecting rent and thus the exclusion applied. (Dkt. No. 46 at

9   5.) This determination was made based on language in the applicable quit claim deed. (Id.) The

10  Ninth Circuit reversed this Court, finding under California law the language in the deed alone

11  was not sufficient evidence to disregard the fact that Belmont and Westmoore were distinct

12  corporate entities. (Dkt. No. 50 at 3.) The Ninth Circuit and this Court focused on imputing rent

13  collecting activity to Belmont on the theory Westmoore was Belmont's alter ego. (Id.)

14         In renewing its motion for summary judgment Century abandons the alter ego argument,

15  at least for the purposes of the motion, to switch to an agency theory argument. (Dkt. No. 57 at

16  6.) Century argues it can now produce exhibits that conclusively establish rent collection by

17  Westmoore can be imputed to Belmont Seattle: (1) the Operating Agreement of Belmont Seattle

18  LLC, dated March 15, 2007; and (2) the Majority Action by the Members of Belmont Seattle,

19  LLC, dated October 15, 2007. (Id. at 3.) On this record, Century argues it is possible to impute

20  Westmoore's rent collecting activity to Belmont as Belmont's agent. (Id. at 6.)

21         The Ninth Circuit held in this case California law applies with regard to issues

22  concerning Belmont's "internal affairs and the liability of its members and managers" in

23  accordance with Wash. Rev. Code § 25.15.310(1)(a). (Dkt. No. 50 at 2, n.1) Century cites Cal.

24  Corp. Code § 17151(b)(2) (superceded as of January 1, 2014), which provided in pertinent part:

1
2
3
4

"Every manager is an agent of the limited liability company for the purposes of its
business or affairs, and the act of any manager . . . apparently carrying on in the
usual way the business or affairs of the limited liability company of which the
person is the manager, binds the limited liability company, unless the manager so
acting has, in fact, no authority to act for the limited liability company in the
particular matter, and the person with whom the manger is dealing has actual
knowledge of the fact that the manager has no such authority."

5  Neither party disputes this is the law applicable to this case, despite its recent repeal. This law,

6  along with the general law of agency, demonstrates Century's new documents are insufficient to

7  support summary judgment because not every act of an agent can be imputed to the principal.

8        Under the general law of agency, "[o]nly interactions that are within the scope of an

9  agency relationship affect the principal's legal position." RESTATEMENT (THIRD) OF AGENCY §

10  1.01, cmt. c. (2006).  The Operating Agreement provided by Century designates Westmoore as

11  manager of Belmont Seattle, LLC as of March 15, 2007. (Dkt. No. 58-1 at 2.) The Majority

12  Action by Members of Belmont Seattle, LLC document shows Westmoore resigned as manager

13  effective October 10, 2007. (Dkt. No. 58-2 at 1.) Neither document indicates that the collection

14  of rent was part of Belmont's business, or that Westmoore collected rent on behalf of Belmont.

15  The Operating Agreement states the initial purpose of Belmont Seattle, LLC was to "purchase

16  the [Belmont] apartment building . . . for conversion into condominiums for resale . . .[and] the

17  Company may exercise any powers advisable or necessary to pursue the same and engage in any

18  and all activities related or incidental thereto." (Id. at 2.) The powers of the manager are listed on

19  the Operating Agreement, and collecting rent is not listed. (Id. at 10.) While one could construe

20  "related and incidental" activities to include collecting rent, it is not so clear as to warrant

21  summary judgment.

22        Further, the Operating Agreement allowed Westmoore to "engage in or possess an

23  interest in other business ventures of every nature and description" such that Westmoore could

24

ORDER DENYING MOTIONS FOR SUMMARY
JUDGMENT- 7

1  have been collecting rent as its own separate enterprise. (Dkt. No. 58-1 at 12.) The Operating

2  Agreement forbids comingling of Belmont's funds with the funds of any other entity. (Id. at 11.)

3  The new exhibits do not demonstrate, and the record contains no evidence, that Westmoore was

4  depositing rent money into the Belmont bank accounts. On this record, while it is clear

5  Westmoore was Belmont's agent for conducting Belmont's business, it is not clear Belmont's

6  business included collecting rent. Material issues of fact remain, and the Court DENIES

7  summary judgment to Century.

8                                               **Conclusion**

9         Because the record is insufficient to warrant summary judgment in favor of either party,

10 both motions for summary judgment are DENIED. (Dkt. Nos. 55 and 57.) Finding the record

11 could be further developed such that summary judgment might be warranted in the future, the

12 denial is without prejudice. Defendant's motion for attorney's fees and costs is also DENIED

13 because a substantive ruling on the issue of coverage has not been made.

14

15        The clerk is ordered to provide copies of this order to all counsel.

16        Dated this 9th day of April, 2014.

17

18

19

20                                      Marsha J. Pechman
                                        Chief United States District Judge

21

22

23

24