1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  CENTURY SURETY COMPANY,                    CASE NO. C12-823 MJP

11              Plaintiff,                      ORDER ON MOTIONS FOR
                                                SUMMARY JUDGMENT
12      v.

13  BELMONT SEATTLE, LLC,

14              Defendant.

15

16      THIS MATTER comes before the Court on Plaintiff Century Surety Company's motion

17  for summary judgment (Dkt. No. 94) and Defendant Belmont Seattle, LLC's motion for

18  summary judgment (Dkt. No. 91).  Having reviewed the motions, the responses (Dkt. Nos. 97,

19  100), and all related papers, the Court GRANTS Plaintiff's motion for summary judgment and

20  DENIES Defendant's motion for summary judgment.

21                              **Background**

22      In 2005, Westmoore Management, LLC ("Westmoore"), Jacqueline and Marwan Bahu,

23  and other investors formed a joint venture to purchase Belmont Place apartments, an apartment

24  building in Seattle, and convert it into condominiums.  (Dkt. No. 94 at 6); (Dkt. No. 91 at 3.)  In

1  October of 2005, the parties executed the Joint Venture Agreement ("JVA") which provided

2  Westmoore would be the manager of the joint venture.  (Dkt. No. 94 at 7.)

3      Under the JVA, Westmoore's authority encompassed ". . . all actions and decisions

4  respecting the management, operation and control of the Joint Venture" and its actions were

5  "binding upon the joint venture."  (Dkt. No. 94 at 7.)  In October 2005, the investors purchased

6  the Belmont Place apartment building.  (Dkt. No. 91 at 3.)

7      Between 2005 and 2007, Westmoore worked to move existing tenants out of the

8  apartment building.  (Id.)  Westmoore did not renew or enter into any new leases, but continued

9  to collect rents from existing tenants through its property manager Allied Group ("Allied") until

10  all tenants were vacated from the building.  (Id.)  Allied deposited the rents in Westmoore's

11  account.  (Id.)

12      On March 15, 2007, the Bahus and other investors executed the Belmont Seattle, LLC

13  Operating Agreement ("Operating Agreement").  (Dkt. No. 94 at 7.)  Like the JVA, the

14  Operating Agreement designated Westmoore as manager of Belmont Seattle, LLC ("Belmont").

15  (Id.)  Belmont's organization and structure also mirrored that of the joint venture.  (Id.)

16      Belmont took title of the apartment building by quit claim deed in April 2007.  (Dkt. No.

17  94 at 8.)  The deed cited, as consideration for the transaction, "mere change in identity or form

18  pursuant to WAC 458-61A-211(a)."   (Id.)   In May 2007, Belmont began converting the

19  apartment building into condominiums.  (Dkt. No. 91 at 5.)  Construction was completed in April

20  2008.  (Id.)

21      Century Surety Company ("Century") issued an insurance policy to the Insurance

22  Program for Association Housing ("IPAH") for the one-year period from December 1, 2006 to

23  December 1, 2007.  (Dkt. No. 94 at 3.)  Century added Belmont Place apartments to the policy

24

1  by an endorsement dated April 30, 2007.  (Id.)  Belmont sold 11 condominium units and

2  remained the owner of 31 units at the end of the coverage period.  (Dkt. No. 91 at 8.)

3       In December 2011, the condominium owners brought suit against Belmont and the Bahus

4  for alleged construction defects.  (Dkt. No. 94 at 3.)  Century agreed to defend Belmont and the

5  Bahus under a reservation of rights.  (Id. at 4.)  In May 2012, Century filed a declaratory action

6  seeking a determination from this Court as to whether there was a coverage obligation in the

7  underlying lawsuit.  (Dkt. No. 1.)  Belmont counter-claimed for coverage.  (Dkt. No. 14.)

8       Century challenged its coverage obligation based on the following exclusionary language

9  in the policy for property damage to:

10      (1) Property you own, rent, or occupy, including any costs or expenses incurred by you
          or any other person, organization or entity, for repair, replacement, enhancement,
11        restoration or maintenance of such property, for any reason, including prevention of
          injury to a person or damage to another's property; ("owned premises exclusion")

12      (2) Premises you sell, give away or abandon, if the "property damage" arises out of any
13        of those premises;  ("alienated premises exclusion")
          ***

14        Paragraph (2) of this exclusion does not apply if the premises are "your work" and
15        were never occupied, rented or held out for rental by you.

16  (Dkt. No. 95-1 at 8-9.)

17      On December 19, 2012, this Court issued an Order granting summary judgment in favor

18  of Century on the grounds that both exclusions applied to bar coverage because Westmoore

19  "stood in the shoes of Belmont" in collecting rent.  (Dkt. No. 46 at 5.)  This Court's ruling was

20  based on language in the quit claim deed, which stated Westmoore "in consideration of mere

21  change in identity and form pursuant to WAC 458-61A-211(a) in hand paid, conveys and quit

22  claims [the property] to Belmont Seattle, LLC."  (Id.)

23

24

1    Belmont appealed the Order, and the Ninth Circuit reversed and remanded, finding the

2    record had not been sufficiently developed to impute Westmoore's rent collecting activity to

3    Belmont and grant summary judgment on an alter-ego theory.  (Dkt. No. 50.)  While the appeal

4    was pending, the underlying lawsuit against the Bahus and Belmont settled, and other insurers

5    paid the settlement.  (Dkt. No. 55 at 2.)  Century petitioned for panel rehearing en banc, which

6    was denied.  (Appellate Dkt. Nos. 26, 30.)

7    On remand, both parties filed motions for summary judgment.  (Dkt. Nos. 55, 57.)

8    Belmont moved for summary judgment arguing that Century's suit was moot in light of the

9    settlement and also for Olympic Steamship attorney's fees on the grounds that it prevailed

10   against Century's claim for declaratory judgment.  (Dkt. No. 55.)  Century moved for summary

11   judgment on the grounds that the alienated property exclusion bars coverage because Belmont

12   "rented or held out for rental" units through its agent Westmoore.  (Dkt. No. 57.)

13   On April 4, 2014, this Court issued an Order denying both motions for summary

14   judgment.  (Dkt. No. 62.)  This Court denied Belmont's motion for summary judgment on the

15   grounds that Belmont's request for Olympic Steamship attorney's fees was premature because

16   there had been no final substantive ruling regarding coverage.  (Id. at 5.)  This Court denied

17   Century's motion for summary judgment because while it was clear "Westmoore was Belmont's

18   agent for conducting Belmont's business," it was not clear "Belmont's business included

19   collecting rent."  (Id. at 8.)  This Court noted that Century's exhibits did not demonstrate "that

20   Westmoore was depositing rent money into the Belmont bank accounts."  (Id.)

21   This case is now before the Court on the parties' renewed motions for summary

22   judgment.  (Dkt. Nos. 91, 94.)  Century argues that summary judgment is appropriate because

23   Belmont "rented" or "held out for rental" the premises at issue and the exception to the alienated

24

premises exclusion, therefore, does not apply.  (Dkt. No. 94.)  Belmont contends that the exception to the alienated premises exclusion preserves coverage and that it is entitled to Olympic Steamship attorney's fees.  (Dkt. No. 91.)

**Analysis**

I.    Summary Judgment Standard

Summary judgment is proper where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In assessing whether a party has met its burden, the underlying evidence must be viewed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

II.    Burden of Proof

Century and Belmont dispute which party bears the burden of proof with respect to the exception to the alienated premises exclusion.

Century contends that "[i]n past pleadings, Belmont Seattle has incorrectly claimed that it is Century Surety's burden to show that the exception does not apply."  (Dkt. No. 94 at 12-13.) Century relies primarily on an opinion from this Court to argue that Belmont, the insured, bears the burden of proof with respect to the exception to an exclusion in the insurance policy.  (Id.) (citing Mid-Continent Cas. Co. v. Titan Constr. Corp., Case No. 2:12-cv-0671-MJP, Dkt. No. 166 at 7-8 (W.D. Wash. 2009)).

Belmont argues Mid-Continent did not rely on any Washington authority and is therefore not relevant.  (Dkt. No. 100 at 5-6.)  Belmont contends "no Washington case has held that a policyholder has the burden of proving exceptions."  (Id. at 6.)  Belmont asserts, because the Washington Supreme Court has not decided this issue, this Court's task is to predict how the

1  Washington Supreme Court would resolve this issue.  (Id.)  Belmont argues under Washington

2  law, the policyholder only has the burden of proving that its loss falls within the scope of the

3  policy's insured losses.  (Id.)  Belmont contends because "an exception to an exclusion does not

4  create coverage, it only narrows the exclusion," Century has the burden of proof with respect to

5  the exception to the alienated premises exclusion.  (Id.)

6         Belmont's analysis is not persuasive.  While this Court is without Washington precedent

7  on this issue, the majority of courts that have dealt with this issue have placed the burden on the

8  insured.  See e.g. Northern Ins. Co. v. Aardvark K Assocs., Inc., 942 F.3d 189, 195 (3d Cir.

9  1991); Covenant Ins. Co. v. Friday Eng'g, Inc., 742 F. Supp. 708, 711 (D. Mass. 1990); Buell v.

10  Indus., Inc. v. Greater New York Mut. Ins. Co., 791 A.2d 489, 504-5 (Conn. 2002); Highlands

11  Ins. Co. v. Aeorvox Inc., 676 N.E.2d 801, 804-5 (Mass. 1997).

12        The insured stands to benefit if an exception to an exclusion in an insurance policy

13  applies, because the exception has the effect of restoring coverage.  Placing the burden on the

14  insured is consistent with the notion that the burden should follow the benefit.  LEE R. RUSS &

15  THOMAS E. SEGALLA, COUCH ON INSURANCE § 254:13 (3d ed. 2014).  Further, the exception at

16  issue applies if Belmont "never occupied, rented, or held out for rental" the premises at issue.

17  (Dkt. No. 95-1 at 9.)  Placing the burden on Belmont is appropriate because Belmont, as the

18  owner of the premises, would have the greatest access to any evidence relevant to the exception.

19        Belmont bears the burden of proof with respect to the exception to the alienated premises

20  exclusion.

21  III.    Definition of "Premises"

22        The insurance policy does not define the term "premises."  (Dkt. No. 95-1.)  The parties

23  dispute whether the term "premises" as used in the exception to the alienated premises exclusion

24

1  refers to the entire property or to the 11 units that Belmont sold during the coverage period.

2  (Dkt. No. 97 at 9); (Dkt. No. 105 at 3.)

3       Century contends the term "premises" should be construed broadly to mean the entire

4  property.  (Dkt. No. 97 at 9.)  Century argues that this should be the case because the

5  endorsement adding Belmont Place apartments to the insurance policy describes the location

6  added as "Belmont, Seattle, LLC, Belmont Place, 231 Belmont Ave., Seattle, WA 98102."  (Id.)

7  Under Century's definition of "premises," the exception to the alienated premises exclusion

8  would not apply if Belmont rented <u>any</u> units during or prior to the coverage period.

9       Belmont argues the term "premises" should be construed narrowly to mean the 11 units

10  that it sold during the coverage period.  (Dkt. No. 91 at 10.)  Belmont argues that the exception

11  to the alienated premises exclusion applies in this case because it never rented or received rental

12  income from the 11 units it later sold during the coverage period.  (Id.)

13       Belmont's construction of "premises" is untenable.  As Century notes in its response

14  brief, construing "premises" to mean the 11 condominium units that Belmont sold during the

15  coverage period would lead to absurd results.  (Dkt. No. 97 at 10.)  If a unit-by-unit analysis

16  were required under the policy, a developer could build an apartment building, rent out all of the

17  apartments except one, convert the apartments to condominiums, and would still be entitled to a

18  defense from its insurer if the condominium owners sued for construction defects.  (Id.)  The

19  Court declines to adopt Belmont's definition of "premises."  The policy at issue describes the

20  insured as "Belmont Seattle, LLC, Belmont Place, 231 Belmont Ave., Seattle, WA 98102."

21  (Dkt. No. 95-1 at 10.)  The word "premises" in the exception to the alienated premises exclusion

22  refers to the entire property.

23

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 7

IV.     <u>Belmont's Motion for Summary Judgment</u>

Belmont has the burden of proof with respect to the exception to the alienated premises exclusion.  In other words, Belmont must prove that it never "rented" or "held out for rental" the premises at issue.  Belmont advances two arguments to support its position that the exception to the alienated premises exclusion applies: (1) Belmont never executed any agreements to pay rent with respect to the 11 units it sold during the coverage period; and (2) Belmont never received any rental income from the 11 units it sold during the coverage period.  (Dkt. No. 91 at 9-13.)

Belmont first contends it never executed any agreements to pay rent with respect to the 11 units it sold during the coverage period.  (<u>Id.</u> at 9.)  Belmont asserts because the term "rent" is ambiguous, the Court should apply the "plain, ordinary, and popular" meaning of "rent."  (<u>Id.</u>)  Belmont argues one definition of rent is "to take and hold under an agreement to pay rent."  (<u>Id.</u>)  Belmont further contends that "the record contains no evidence that Westmoore, the Bahus, or any other Belmont <u>member</u> ever executed any rental agreements or otherwise allowed tenants to 'take and hold [the 11 Units] under an agreement to pay rent.'"  (<u>Id.</u> at 10.)

Belmont's definition of "rent" is unduly narrow.  As Century points out in its response brief, under Washington law, only an agreement to lease for more than one year is within the statute of frauds.  (Dkt. No. 97 at 8.); <u>see also</u> <u>Firth v. Lu</u>, 146 Wn.2d 608, 615 (2002).  It is conceivable that Westmoore or Belmont entered into enforceable leases for a year or less without a written agreement.  Another definition of "rent" is "to pay for the use of another's property." BLACK'S LAW DICTIONARY (9th ed. 2009).  This definition is more suited to the policy at issue which states the insured's business is "apartments."  (Dkt. No. 95-1 at 4.)

Belmont's next argument is that the exception to the alienated premises exclusion applies because it never received any rental income from the 11 units it later sold during the coverage

1  period.  (Dkt. No. 91 at 10.)  The Court addresses this argument along with its discussion of

2  Century's motion for summary judgment.

3        V.    Century's Motion for Summary Judgment

4        Century asks the Court to find Belmont "rented" or "held out for rental" the premises at

5  issue before, during, and after the coverage period such that the exception to the alienated

6  premises exclusion does not apply.  (Dkt. No. 94 at 15.)  Century advances at least three separate

7  theories to support its position: (1) Belmont was an "alter ego" or "mere continuation" of the

8  Belmont Joint Venture; (2) Westmoore was Belmont's agent; and (3) Belmont rented the

9  property after Century's policy.  (Id. 15-17.)

10       Century also argues the Court should find that it did not have a duty to defend Belmont in

11  the underlying suit because the Belmont Seattle, LLC entity in this lawsuit is not the entity

12  insured by its policy.  (Id. at 11.)  The Court considers Century's agency argument first and then

13  considers Century's argument that the Belmont Seattle, LLC entity in this lawsuit is not the

14  entity insured by its policy.

15       A.    Westmoore as Belmont's Agent

16       Century argues the Court should grant its motion for summary judgment because

17  Westmoore was Belmont's "authorized agent in its landlord-related activities" and collected rent

18  on Belmont's behalf.  (Id. at 15.)  Century previously moved for summary judgment on an

19  agency theory and this Court denied Century's motion because there was insufficient evidence

20  that Westmoore was collecting rent on behalf of Belmont.  (Dkt. No. 62.)

21       Both this Court and the Ninth Circuit have applied California law with regard to issues

22  concerning Belmont's "internal affairs and the liability of its members and managers" in

23  accordance with Wash. Rev. Code § 25.15.310(1)(a).  (Dkt. No. 50 at 2, n.1); (Dkt. No. 62 at 6.)

24

1  In its previous motion for summary judgment, Century cited to and this Court applied California

2  Corporation's Code Section 17151(b)(2) (superseded as of January 1, 2014) as the relevant

3  agency statute under California law.  That statute provides:

> Every manager is an agent of the limited liability company for the purposes of its
> business or affairs, and the act of any manager . . . apparently carrying on in the
> usual way the business or affairs of the limited liability company of which the
> person is the manager, binds the limited liability company, unless the manager so
> acting has, in fact, no authority to act for the limited liability company in the
> particular matter, and the person with whom the manager is dealing has actual
> knowledge of the fact that the manager has no authority.

This Court noted in its previous Order denying Century's motion for summary judgment that

"[t]he Operating Agreement provided by Century designates Westmoore as manger of Belmont

Seattle, LLC as of March 15, 2007." (Dkt. No. 62 at 7.)  This Court further noted the "Majority

Action by Members of Belmont Seattle, LLC document shows Westmoore resigned as manager

effective October 10, 2007."  (Id.)   This Court found "[n]either document indicates that

collection of rent was part of Belmont's business, or that Westmoore collected rent on behalf of

Belmont." (Id.)  This Court denied Century's motion for summary judgment because while it

was clear "Westmoore was Belmont's agent for conducting Belmont's business" it was not clear

"Belmont's business included collecting rent." (Id.)

Century argues the Court should grant its motion for summary judgment because there

are no genuine issues of material fact as to whether Westmoore collected rent on Belmont's

behalf. (Dkt. No. 94 at 3.)  Century's argument is supported primarily by two documents: (1)

Belmont's 2007 tax returns; and (2) records from Belmont's bank.  (Id. at 2.)

Belmont's 2007 tax return shows that it had a gross rental income of $118,432. (Dkt. No.

95-2 at 20.)  On the Schedule K-1, the net rental income is allocated to Belmont's members

according to their equity interest as follows:

- Westmoore Management (10%) ($53,024)

- Westmoore Income Properties (3%) ($15,907)
- Westmoore Properties (8%) ($42,419)
- Darrell & Mary Rupple (10%) ($53,024)
- Marwan & Jacqueline Bahu (56%) ($296,935)
- Howard and Lourena Reser (13%) ($68,931)

(Dkt. No. 94 at 9-10); (Dkt. No. 95-2 at 6.)

It is undisputed that Westmoore continued to collect rent from tenants at Belmont Place apartments in 2007 until all of the tenants were vacated.  While Belmont contends "all rental income that came in during 2007 first went to Allied Property Management, then to Westmoore" and that "no 2007 rental income was ever paid into Belmont's account," this argument is belied by Belmont's 2007 tax return.  (Dkt. No. 91 at 10.)  Belmont also argues that the exception to the alienated premises exclusion applies because it never received rental income from the 11 units it sold during the coverage period.  (Dkt. No. 91 at 10.)  However, as discussed supra Section III, the Court declines to adopt Belmont's overly narrow definition of "premises."  Century's evidence establishes that Westmoore acted as Belmont's agent and collected rent on Belmont's behalf in 2007.  Because Belmont rented the property, the exception to the alienated premises exclusion does not apply and Belmont is not entitled to coverage.

> B.   Belmont Seattle, LLC Entity in this Lawsuit

Century makes one additional argument in its motion for summary judgment unrelated to the alienated premises exclusion.  Century contends that "[o]n October 12, 2010, Belmont filed a certificate of cancellation" and that "the Belmont Seattle, LLC that is a party in this litigation is a new and different LLC formed by the Bahus in 2012."  (Dkt. No. 94 at 11.)  Century argues "this Belmont entity that is a party to this lawsuit is not entitled to any benefits under the policy and the Court can and should rule . . . that Century does not owe coverage to defendant Belmont Seattle, LLC." (Id. at 18.)

1    A certificate of cancellation from the Office of the Secretary of State of California shows

2  Belmont Seattle, LLC was cancelled in 2010.  (Dkt. No. 95-20).  The limited liability company

3  articles of organization for the new Belmont Seattle, LLC show it was formed in 2012.  (Dkt.

4  No. 95-21).

5    Belmont contends the law of the case and the doctrine of judicial estoppel prevent

6  Century from taking this position at this late date in the case.  (Dkt. No. 100 at 18.)

7    "Judicial estoppel is an equitable doctrine that precludes a party from gaining an

8  advantage by asserting one position, and then later seeking an advantage by taking a clearly

9  inconsistent position."  Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir.

10  2001).  Courts invoke judicial estoppel not only to prevent a party from gaining an advantage by

11  taking inconsistent positions, but also because of "general consideration[s] of the orderly

12  administration of justice and regard for the dignity of judicial proceedings" and to "protect

13  against a litigant playing fast and loose with the courts."  Id.

14    Factors a court may consider when invoking judicial estoppel include: (1) whether the

15  party's later position is "clearly inconsistent" with its earlier position; (2) whether the party has

16  succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance

17  of an inconsistent position in a later proceeding would create "the perception that either the first

18  or the second court was misled;" and (3) whether the party seeking to assert an inconsistent

19  position would derive an unfair advantage or impose an unfair detriment on the opposing party if

20  not estopped."  Id. 782-83 (citing New Hampshire v. Maine, 532 U.S. 742 (2001)).  Absent

21  success in a prior proceeding, a party's later inconsistent position introduces no risk of

22  inconsistent court determinations and thus no threat to judicial integrity.  Id.

23

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 12

1    While Century raises its argument belatedly, the Court finds the doctrine of judicial

2    estoppel is inapplicable in this case.  Century's position that the Belmont Seattle, LLC entity in

3    this lawsuit was never covered by its policy is not "clearly inconsistent" with its position in

4    briefing previously filed with this Court.  Belmont has the burden of proving it was covered by

5    Century's policy.  Brown v. Snohomish Cnty. Physicians Corp., 120 Wn.2d 747, 758-59 (1993).

6    Belmont—not Century—has asserted throughout this litigation that it is entitled to coverage

7    under Century's policy.  Further, Century's position that the Belmont Seattle, LLC entity in this

8    lawsuit was never covered by its policy does not introduce risk of inconsistent court

9    determinations or threaten judicial integrity, because there has been no final substantive ruling on

10   the issue of coverage in this case.  While an argument might be made that Belmont may be

11   prejudiced by Century's delay in raising this argument, Belmont's conduct in this litigation has

12   also prejudiced Century.  Specifically, Belmont's position that Century had a duty to defend

13   Belmont in the underlying suit—when in fact it is not the entity insured by Century's policy—

14   prejudiced Century by compelling Century to initiate and expend resources on this lawsuit.  On

15   balance, the factors do not weigh in favor of invoking judicial estoppel.

16   Belmont is entitled to an award of Olympic Steamship attorney's fees if Century had a

17   duty to defend Belmont in the underlying lawsuit brought by the condominium owners

18   association.  Olympic S.S. Co., Inc. v. Centennial Ins. Co., 117 Wn.2d 37, 53 (1991).  Because it

19   was never insured by Century's policy, Century did not have a duty to defend the Belmont entity

20   in this lawsuit in the underlying suit.  The Court finds that Century's motion for summary

21   judgment should also be granted because the Belmont entity in this lawsuit was never insured by

22   Century's policy.

23

24

1

## <u>Conclusion</u>

2    Because the exception to the alienated premises exclusion does not apply and because the

3 Belmont entity in this lawsuit was never insured by Century's policy, summary judgment is

4 GRANTED in favor of Century.

5    The clerk is ordered to provide copies of this order to all counsel.

6    Dated this 19th day of November, 2014.

7

8    Marsha J. Pechman
     United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 14